UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MONICA BROWN, Individually and as Heir of MARK A. JACONSKI, Deceased, | ) ) ) |
| Plaintiff, | ) ) |
| | ) Cause No. 4:17-cv-1679 |
| vs | ) ) JURY TRIAL DEMANDED |
| TANYA DRUMMOND, PATRICIA "PATSY" MARTIN, JACOB ALLEN, SGT. CALEB NOLAND, SHERIFF JOHN COTTLE, and LINCOLN COUNTY, MISSOURI, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**Plaintiff's First Complaint with Jury Demand**

Plaintiff Monica Brown, as an individual and heir of Mark A. Jaconski, by and through her undersigned counsel, file the following First Complaint.

*Introduction*

1. This is a civil rights action for monetary relief filed by Monica Brown, the surviving mother and heir of her deceased son, Mark A. Jaconski, a former inmate of the Lincoln County Jail, for violations of the Eighth and Fourteenth Amendments of the United States Constitution, 42 U.S.C. § 1983. In addition, Plaintiff asserts Lincoln County had a policy, practice, and custom of failing to monitor, train, discipline, and supervise its employees. Plaintiff also alleges the torts of medical malpractice and wrongful death.

1

*Jurisdiction and Venue*

2. This Court has jurisdiction over Plaintiff's claims of violation of federal constitutional rights pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) - (4), and 1443.

3. This Court has supplemental jurisdiction over Plaintiff's state law tort claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and E.D.Mo.L.R. 2.07(A)(1) because the claim for relief arose in Lincoln County, Missouri, which is located within the Eastern District of Missouri.

*Parties*

5. Plaintiff Monica Brown is the surviving mother of the deceased, Mark A. Jaconski ("Jaconski"), and brings the present action in her individual capacity and through her role as his heir.

6. Defendant Tanya Drummond was a medical nurse employed at the Lincoln County Jail during the events alleged in this complaint. She is sued in her individual and/or official capacity.

7. Defendants Patsy Martin, Jacob Allen, and Sergeant Caleb Noland were correctional officers employed at the Lincoln County Jail during the events alleged in this complaint. They are sued in their individual and/or official capacities.

8. Defendant John Cottle is the chief law enforcement officer of Lincoln County. He is responsible for the Lincoln County jail and was in said position during the events alleged in this complaint. At all relevant times, he was the director of the Lincoln County Jail and was the policy-making authority for Lincoln County with respect to the operation of the Lincoln County Jail. He was responsible for the implementation of

2

policy, procedure, custom, and practices of the Lincoln County Jail and for the training, supervision, and discipline of employees who worked in the County Jail. He is sued in his individual and/or official capacity.

9. Defendant Lincoln County, Missouri is located in the Eastern District of Missouri. Lincoln County is a body corporate and a duly organized political subdivision of the State of Missouri that operated the Lincoln County Sheriff's Office and was responsible for the training, policies, customs, and practices implemented by and through its policymakers, agents and employees.

10. Each defendant acted under color of state law at all times relevant to this complaint.

*Statement of Facts Common to All Counts*

11. On or about June 17, 2015, Jaconski was walking on County Road 47 South wherein he was apprehended and detained by Lincoln County Sheriff Deputies for outstanding municipal court traffic related warrants.

12. Jaconski was taken to Mercy Hospital in Troy, Missouri for a "fit for confinement" determination because Jaconski suffered physical injuries as the result of this apprehension and detention. Additionally, Jaconski was suffering from apparent and severe mental health issues.

13. Once he was determined to be "fit for confinement" by Mercy Hospital, he was transported to the Lincoln County Jail located in Troy, Missouri, as a pretrial detainee pending arraignment on his traffic warrants.

14. Soon thereafter, Plaintiff Brown made numerous attempts by telephone to advise the Lincoln County Jail of Jaconski's mental health history and the need for his prescribed medication. Plaintiff left repeated messages; however, to no avail.

15. Jaconski was booked and processed into the Lincoln County Jail by an unknown employee of said facility. A mental health screening of Jaconski was not conducted, but rather it was allegedly written on his booking sheet and questionnaire that Jaconski was a methamphetamine user and was uncooperative at the time of his arrival to the jail.

16. Then, throughout the preceding days prior to the incident, Jaconski was never given any medication after he had made repeated requests to be seen by Defendant Drummond, who continuously failed to provide him with the proper medical care. Due to the lack of receiving medication for his mental health needs, Jaconski began to suffer from auditory and visual hallucinations.

17. Plaintiff Brown continued to make attempts in contacting Lincoln County Jail personnel to ensure that her son was receiving the proper medical care and attention he needed based upon his prior history of mental health ailments, including the risk of suicide; however, again to no avail. Defendant Noland was aware that Plaintiff Brown had been calling the Lincoln County Jail.

18. After two days of being incarcerated on municipal court traffic warrants, on the morning of June 19, 2015, Jaconski was finally seen by a municipal court judge who ordered that Jaconski be released from custody on his own recognizance forthwith.

19.     Rather than being immediately processed for release, Jaconski was placed back into the general population of the Lincoln County Jail with no notification from jail officials as to when/if he was going to be released from custody.

20.     On June 19, 2015, during the scheduled lunch time of the Lincoln County Jail, a very tired looking Jaconski approached Defendant Noland and informed him that he wanted a cell by himself because he was hearing voices that weren't really there. Jaconski also informed Defendant Noland that he was bi-polar and a schizophrenic. It was also at this time when Jaconski informed Defendant Noland that Jaconski had not been taking his prescribed medication and that he was going to hurt himself.

21.     Immediately after being told this information by Jaconski, Defendant Noland took no further action on Jaconski's medical needs, but rather ordered Defendants Martin and Allen to place Jaconski in an isolation cell by himself until the issue could be "resolved", wherein he remained for approximately forty minutes to one hour.

22.     While being placed into the isolation cell located in F-Pod, Jaconski informed Defendants Martin and Allen that he *did not* want to be by himself and that he wanted to be in a place he could be observed because he thought he was going to cause harm to himself.

22.     At no time during this approximate forty minutes to one hour period did any employee of the Lincoln County Jail, including but not limited to Defendants Martin, Allen or Noland, check on the well-being of Jaconski.

23.     Mark Jaconski was found in this cell, approximately forty minutes to one hour after being put in there, hanging by the neck from his pants tied to the top bunk rail. Jaconski was unresponsive and Lincoln Jail employees started chest compressions until

emergency medical personnel arrived to transport Jaconski to the hospital.  It was at this time that Defendant Drummond finally came to administer any medical care to Jaconski.

24. Jaconski was in the hospital for the next several months and suffered from anoxic encephalopathy, quadriplegia, and seizure disorder.

25. Jaconski was in the intensive care unit for a period of time and then released to a rehabilitation center, until he was ultimately released to Plaintiff Brown to arrange for home hospice care.

26. Mark Jaconski passed away due to complications from his injuries suffered in the Lincoln County Jail on January 22, 2016.

27. At all times pertinent to this lawsuit, Defendants Drummond, Martin, Allen and Noland were employees and/or agents of Defendant Lincoln County.

28. Defendants Drummond, Martin, Allen and Noland are being sued in their individual capacities and as agents/employees of their employer, Defendant Lincoln County, Missouri.

29. That all significant contacts and actions relating to this cause took place in Lincoln County, Missouri.

30. That this incident was not the first suicide/suicide attempt involving a Lincoln County Jail inmate.  Defendant Cottle had notice of his deputies' potential for deliberate indifference to serious medical needs, including but not limited to vulnerability to suicide, against pre-trial detainees and suspects, yet failed to prevent future incidences and provide an environment with sufficient monitoring.

31. As a direct and proximate cause of the actions of Defendants described herein, Jaconski and Plaintiff suffered damages, including:

6

      A.    Violation of his constitutional rights,

      B.    Pain,

      C.    Suffering,

      D.    Humiliation,

      E.    Indignity,

      F.    Disgrace,

      G.    Stress,

      H.    Fear,

      I.    Severe Mental and Emotional Distress.

32.     Plaintiff Brown continues to suffer as a direct and proximate cause of the harm inflicted upon her son by Defendants on or about June 19, 2015.

33.     In addition to the damages outlined above, Plaintiff has additional damages, including special damages such as hospital and medical bills that will need to be paid out of the Estate.

34.     The conduct and actions of Defendants, including the official practices and customs and policies of Defendants Lincoln County and Cottle, caused the damages Jaconski and Plaintiff suffered.

35.     Defendants Lincoln County and Cottle failed to train, supervise, and discipline Defendants Drummond, Martin, Allen and Noland; specifically:

      A.    Defendants failed to have in effect and/or failed to enforce effective policies, procedures, and training prohibiting deliberate indifference to medical needs, especially individuals who are vulnerable to suicide, by its staff;

    B. Defendants failed to have in effect and/or failed to enforce effective policies, procedures, and training instructing its staff on the signs of vulnerability of suicide of an inmate by an employee;

    C. Defendants failed to have in effect and/or failed to enforce effective policies, procedures, and training instructing its staff about the steps to be followed if its staff suspects that an employee is failing to adequately address the medical needs of an inmate and their vulnerability to suicide;

    D. Defendants failed to have in effect and/or failed to enforce effective policies, procedures, and training instructing employees about the steps to be followed when an inmate has a complaint about their mental health well-being and said complaint is not being addressed by a staff member;

    E. Defendants failed to properly supervise Defendants Drummond, Martin, Allen and Noland, thereby enabling them to deliberately ignore and/or be indifferent to Jaconski, which directly lead to his injuries causing his ultimate demise;

    F. Defendants failed to provide proper security and monitoring to protect inmates; and

    G. Defendants failed to use reasonable care in hiring Defendants Drummond, Martin, Allen and Noland, and failed to properly supervise Drummond, Martin, Allen and Noland, thus permitting them to deliberately ignore/indifferent to the vulnerability to suicide of Jaconski.

COUNT I

Violation of Civil Rights

42 U.S.C. § 1983

*Eighth and Fourteenth Amendments – Deliberate Indifference to Serious Medical Needs- Failure to Protect from Suicide- Against Medical Nurse Defendant Tanya Drummond, in her individual and/or official capacity*

36. Plaintiff incorporates herein the allegations made in each preceding paragraph as if each were set forth verbatim.

37. Defendant Drummond violated Mark Jaconski's right to be free from cruel and unusual punishment under the Eighth and Fourteenth amendments of the U.S. Constitution by failing to take reasonable measures to address his vulnerability to suicide. Despite her knowledge of Mark's medical history prior to his processing into the Lincoln County Jail, the numerous phone calls made by Plaintiff Brown to inform Defendant Drummond of Mark's medical needs and ailments that made him vulnerable to suicidal ideation, and his apparent symptoms of threatening auditory hallucinations and the fear of harming himself.  Mark requested to seek medical care because he had not taken his medication, but his requests were ignored by Defendant Drummond.  Defendant Drummond failed to take reasonable measures to prevent Mark from engaging in self-harm or suicide, including but not limited to performing a comprehensive suicide risk assessment upon his processing into the Lincoln County Jail; providing psychological counseling; providing him with the proper medication; or, otherwise counseling other Jail staff against placing Mark in conditions of solitary-type confinement that these Defendants knew would place Mark at an unacceptable risk that he would decompensate and attempt to harm himself because Mark informed them of said possibility.  Despite

9

this knowledge, Defendant Drummond was deliberately indifferent to Mark's vulnerability to suicide, which his attempt to do so resulted in injuries ultimately causing his death.

## COUNT II

### Violation of Civil Rights

### 42 U.S.C. § 1983

*Eighth and Fourteenth Amendments – Deliberate Indifference to Serious Medical Needs- Failure to Protect from Suicide- Against Correctional Officer Defendants Martin, Allen and Noland, in their individual and/or official capacities*

38. Plaintiff incorporates herein the allegations made in each preceding paragraph as if each were set forth verbatim.

39. Defendants Martin, Allen and Noland violated Mark Jaconski's right to be free from cruel and unusual punishment under the Eighth and Fourteenth amendments of the U.S. Constitution by failing to take reasonable measures to address his vulnerability to suicide. Defendants Martin, Allen and Noland were aware that Mark had serious mental health issues and a particular vulnerability to self-harm, as Mark had directly informed them of said information, and as such, was at great risk of self-harm when placed in isolation confinement. Defendants Martin, Allen and Noland were aware that solitary-type confinement creates a substantial risk of decompensation and self-harm when imposed on people with serious mental illness such as Mark. Despite this knowledge, Defendants failed to take reasonable measures to prevent Mark from engaging in self-harm or attempted suicide, including but not limited to consulting with medical staff as to the appropriateness of placing Mark in isolation confinement after he stated he was having auditory hallucinations, did not want to be alone without

supervision, and direct statements that he was fearful that he was going to harm himself. Despite this knowledge, Defendants were deliberately indifferent to Mark's vulnerability to suicide, resulting in injuries that ultimately caused his death.

*COUNT III*

*Violation of Civil Rights*

*42 U.S.C. § 1983*

*Eighth and Fourteenth Amendments – Deliberate Indifference to Serious Medical Needs-
Failure to Protect from Suicide- Against Supervisory Defendants Sheriff John Cottle
and Lincoln, County, Missouri*

40. Plaintiff incorporates herein the allegations made in each preceding paragraph as if each were set forth verbatim.

41. Defendants Sheriff John Cottle and Lincoln County were responsible for authorizing, condoning, implementing, and acquiescing in policies and practices that were deliberately indifferent to inmates who were vulnerable to suicide. These policies and practices caused the injuries to Mark Jaconski, which ultimately lead to his death. These policies and practices include but are not limited to:

- The widespread use of isolation confinement of seriously mentally ill prisoners and those vulnerable to suicide despite Defendants' knowledge that such conditions worsened their mental health problems and carried with them the threat of self-harm and suicide;
- Using isolation confinement on the seriously mentally ill and those vulnerable to suicide without any input from mental health staff about the psychological risks and harms this entailed;
- Failure to ensure staffing levels that were medically necessary to ensure that

medical staff could meet the needs of prisoners with serious mental illness and those who were vulnerable to suicide;

• Acquiescing in a system of mental health care that provided a knowingly and deliberately inferior standard of care for non-medical reasons, severely limiting or refusing to provide drug and alcohol counseling, psychological counseling, and group or vocational therapy, as well as not providing clinical assessments with the frequency and in the conditions that are clinically indicated and medically necessary; inadequate monitoring of the effectiveness of medications; and use of medication as a substitute for more effective treatments.

• Failure to ensure that medical, psychological, psychiatric, security, and any other relevant records pertaining to mentally ill prisoners and those vulnerable to suicide were accessible to medical staff so as to improve continuity of care and enable mental health staff to track the behavior, symptoms, risks, and harms that mentally ill prisoners and those vulnerable to suicide experienced;

• Turning a blind eye to evidence of previous incidences of this kind that have occurred at the Lincoln County Jail; increased rates of self-harm, suicide attempts, and suicides by those with serious mental illness and those vulnerable to suicide in confinement.

42.     Despite Defendants Sheriff John Cottle and Lincoln County being aware of the policies and practices causing harm to those with a vulnerability to suicide and serious mental illness, they failed to take any measures to alter these policies and practices, such as:

• Preventing seriously mentally ill prisoners and those vulnerable to suicide from

placement in isolation confinement.

• Providing for increased staffing so as to make certain that prisoners with serious mental illness were seen with the medically required frequency and in clinically appropriate settings.

• Taking measures to ensure that prisoners were not placed in isolation confinement without taking the necessary steps to ensure that they do not have the means to cause themselves harm.

43. The defendants had at all times relevant to this complaint an established practice and custom of failing to have in effect and/or failing to enforce effective policies, procedures, and training to deal with inmates who are vulnerable to suicide; failing to properly supervise Correctional Officer Defendants Martin, Allen and Noland; failing to provide proper monitoring to protect inmates with mental health issues; failing to use reasonable care in hiring staff; failing to use reasonable care in supervising employees; and failing to properly supervise employees, thereby enabling an inmate to harm himself.

44. The damages suffered by Jaconski on or about June 19, 2015 were directly and proximately caused by the practice and custom of Lincoln County.

45. The policy of Lincoln County, as established and implemented by Defendant Sheriff John Cottle, was the direct and proximate cause of Jaconski and Plaintiff's injuries.

46. Defendants Lincoln County and Sheriff John Cottle failed to properly train, supervise, and oversee its deputies, including Defendants Drummond, Martin, Allen and Noland, Jaconski and Plaintiff's injuries were directly and proximately caused by the failure to properly train, supervise, and oversee jail personnel.

## COUNT IV

*Medical Malpractice*

*Section 538.210, Revised Statutes of Missouri*

*Medical Neglect Claim- Against Medical Nurse Defendant Tanya Drummond, in her individual and/or official capacity*

47. Plaintiff incorporates herein the allegations made in each preceding paragraph as if each were set forth verbatim.

48. Defendant Drummond violated Mark Jaconski's rights under Missouri state law by her negligent conduct in regard to Mark's vulnerability to suicide and related medical needs, including but not limited to mental health care. Defendant Drummond failed to provide mental health care in accord with professional standards, causing injuries that ultimately lead to the death of Mark Jaconski. Despite her knowledge of Mark's history of mental health issues, his previous suicidal ideations that had been passed onto them through Plaintiff Brown, his mental health diagnoses and history that made him vulnerable to the risk of suicide, and the lack of receiving his proper medications to combat said issues.  Defendant Drummond breached her duty to Mark by neglecting Mark's mental health care needs and failing to take reasonable measures to prevent Mark from engaging in self-harm or suicide, including but not limited to performing a comprehensive suicide risk assessment; providing psychological counseling; providing drug and alcohol counseling as recommended; seeing Mark with sufficient frequency, which is evidenced by her absence when Mark was placed into isolation, yet her immediate response to the emergency call when Mark attempted suicide.  Despite this knowledge, Defendant Drummond's gross negligence in regard to

Mark's vulnerability to suicide and other serious mental health care needs were the direct and proximate cause of Mark's serious injuries, which ultimately resulted in his death.

*COUNT V*

*Wrongful Death*

*Section 537.080, Revised Statutes of Missouri*

*Against All Defendants, in their respective individual and/or official capacities*

49. Plaintiff incorporates herein the allegations made in each preceding paragraph as if each were set forth verbatim.

50. The following individuals are eligible to recover damages as a result of Mark Jaconski's death pursuant to § 537.080: his mother, Plaintiff Monica Brown.

51. During his lifetime, Mark Jaconski did not commence any action for the injuries that caused his death and no other action has been filed to recover damages for the wrongful death of decedent.

52. At all relevant times, all Defendants committed acts of willful misconduct and acted with reckless indifference, carelessness, and negligence in regard to the rights of Mark Jaconski.

53. As the direct and proximate result of the acts and omissions of these Defendants, Plaintiffs have suffered the following damages:

a. Expenses of administration related to Mark Jaconski's death; and

b. All other damages permissible in a wrongful death action.

54. Due to the actions and inactions of the Defendants, as described above, Plaintiff Brown, has been deprived of her son's society, comfort, companionship, service,

counsel and support, and are entitled to damages as set forth in Missouri Revised Statute § 537.080.

*Prayer for Relief*

WHEREFORE Plaintiff requests this Court grant the following relief:

    A.    Issue a declaratory judgment stating that:

    1.    The deliberate indifference of Jaconski's vulnerability to suicide by Defendants violated Jaconski's rights under the Eighth and Fourteenth Amendments to the United States Constitution;

    2.    The practices and customs of Defendants Lincoln County and Sheriff Cottle described herein violated Plaintiff's constitutional rights;

    3.    The policies of Defendants Lincoln County and Sheriff Cottle described herein violated Jaconski's constitutional rights;

    4.    The failure of Defendants Lincoln County and Sheriff Cottle to adequately train, supervise, and discipline its jail personnel violated Plaintiff's constitutional rights;

    B.    Award compensatory damages jointly and severally against Defendant Drummond, Martin, Allen and Noland and Defendants Lincoln County, Missouri and Sheriff John Cottle;

    C.    Award punitive damages;

    D.    Award Plaintiff's attorneys' fees and expenses as well as the costs of this action; and

    E.    Grant such other and further relief as is just and proper under the circumstances.

*Jury Trial Demand*

Plaintiff demands trial by jury in all claims so triable.

>Respectfully submitted,
>
>FRANK, JUENGEL & RADEFELD
>ATTORNEYS AT LAW, P.C.
>
>By: */s/ Matthew A. Radefeld*
>MATTHEW A. RADEFELD (#52288MO)
>Attorney for Plaintiff
>7710 Carondelet Avenue, Suite 350
>Clayton, Missouri 63105
>(314) 725-7777

Dated:  June 16, 2017